UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| TERRY A. LEWIS | * | CIVIL ACTION NO.  09-0332<br>Section P |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MOREHOUSE DETENTION<br>CENTER, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

_____Before the undersigned Magistrate Judge, on reference from the District Court, is a

motion for judgment as a matter of law on partial findings, filed by defendants, Keith Clacks

(identified as "Sgt. Clacks"), Samuel Black (identified as "Cpl. Black"), and Isaac Brown

(identified as "Assistant Warden Brown").  For reasons set forth below, it is recommended that

the motion for judgment as a matter of law on partial findings be **DENIED**; it is further

recommended that judgment be entered in favor of defendants, Keith Clacks, Samuel Black, and

Isaac Brown, and against plaintiff, Terry A. Lewis, dismissing, with prejudice, plaintiff's

complaint, in its entirety.

## Background

Pro se plaintiff Terry A. Lewis, proceeding in forma pauperis, filed the instant civil rights

complaint pursuant to 42 U.S.C. § 1983 on February 27, 2009.  Plaintiff is an inmate at the David

Wade Corrections Center, in the custody of Louisiana's Department of Public Safety and

Corrections ("LDOC").  He contends that on July 12, 2008, he was subjected to excessive force

while incarcerated at the Morehouse Parish Detention Center ("MPDC").  He named defendants,

Keith Clacks (identified as "Sgt. Clacks"), Samuel Black (identified as "Cpl. Black"), and Isaac

Brown (identified as "Assistant Warden Brown"), and included the MPDC in the caption of his

complaint.[1]

Following initial review, the court ordered service upon the individual defendants,

Clacks, Black, and Brown.  *See* September 21, 2009, Memorandum Order [doc. # 9].  On April

22, 2010, defendants answered the complaint.  [doc. # 23].[2]  The court afforded the parties time

to conduct discovery and to file dispositive motions, if appropriate.  *See* May 10, 2010, Order

[doc. # 27].  Neither side filed a motion for summary judgment.  Accordingly, the undersigned

scheduled the matter for an evidentiary hearing, representing "**a complete hearing of all**

**witnesses and evidence to be presented by all parties of record**."  (Nov. 23, 2010, Order [doc.

# 44]).  The order included an attachment that explained to the litigants the procedure to obtain

the presence of witnesses at the hearing.  (NOTICE OF PROCEDURES FOR EVIDENTIARY HEARING

BEFORE UNITED STATES MAGISTRATE JUDGE IN PRISONER CIVIL RIGHTS ACTION; Exh. to Nov.

23, 2010, Order).

On January 18, 2011, plaintiff filed two motions:  1) "Motion for Assistance of Inmate

Counsel at Evidentiary Hearing . . ." [doc. # 48]; and 2) motion to subpoena medical records

[doc. # 47].  On February 1, 2011, the court denied the motions.  (Feb. 1, 2011, Order [doc. #

52]).  In the same order, the court noted that, according to plaintiff's pretrial memorandum, he

---

[1]  The court eventually dismissed the MPDC because it did not have the legal capacity to be sued.  (April 30, 2010, Report and Recommendation [doc. # 26]; June 9, 2010, Judgment [doc. # 34]).

[2]  In conjunction with their answer, defendants successfully petitioned the court to set aside entries of default previously entered against them.  *See* doc. #s 17, 24, & 25.

seemed inclined to call several witnesses at the hearing.  *Id.*  The undersigned reminded plaintiff that to obtain the appearance of witnesses at the hearing, he had to comply with specific procedures, which included the filing of an ex parte motion, together with supporting affidavit(s), no later than five weeks prior to the hearing.  *Id.*  Under the circumstances, however, the court extended the deadline until February 14, 2011.  *Id.*  Nevertheless, plaintiff failed to take advantage of this renewed opportunity to secure the presence of his witnesses at the hearing.

On February 22, 2011, the undersigned held an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B) and *Flowers v. Phelps*, 956 F.2d 488 (5th Cir.1992), *modified on other grounds*, 964 F.2d 400 (5th Cir.1992).

## Hearing Testimony and Evidence

At the evidentiary hearing, the court heard testimony from plaintiff Terry A. Lewis and the three individual defendants, Sgt. Keith Clacks, Cpl. Samuel Black, and Warden Isaac Brown.[3]  The court also received into evidence, without objection, the following exhibits

---

[3]  At the hearing, plaintiff expressed an interest in calling additional witnesses, but noted that they had not been subpoenaed.  He professed ignorance regarding the requisite procedures.  However, the court explained to plaintiff that it had instructed him more than once regarding the necessary process to secure the presence of witnesses at the hearing.  Yet, he failed to comply with those procedures.  *See* NOTICE OF PROCEDURES FOR EVIDENTIARY HEARING BEFORE UNITED STATES MAGISTRATE JUDGE IN PRISONER CIVIL RIGHTS ACTION; Exh. to Nov. 23, 2010, Order.  Specifically, plaintiff did not file a motion seeking the witnesses' presence at the hearing.  *Id.*  He also did not submit an affidavit attesting to the prospective witnesses' knowledge of relevant facts.  *Id.*

To the extent that plaintiff seeks to extend the evidentiary record, he has not demonstrated good cause to do so.  *See* Fed.R.Civ.P. 16(b)(4) ("a schedule may be modified only for good cause and with the judge's consent.").  Moreover, the court previously cautioned the parties that "**the hearing before the magistrate judge may be the only chance to present the testimony of witnesses or other evidence, and the parties should be prepared to present their full case before the magistrate judge**." (NOTICE, *supra*) (emphasis in original).  Plaintiff did not ask the court for clarification of the requisite procedures; he also did not seek to continue the hearing to ensure the presence of his prospective witnesses.  Finally, the court observes that

introduced by defendants,

    1.    Morehouse Parish Detention Center Disciplinary Forms;

    2.    Morehouse Parish Detention Center Accident/Incident Reports;

    3.    Plaintiff's Inmate File from Morehouse Detention Center;

    4.    Plaintiff's Request for Administrative Remedy;

    5.    Morehouse Parish Detention Center Declaration of Emergency Treatment;

    6.    Louisiana Department of Public Safety Disciplinary Report; and

    7.    Plaintiff's complaint filed in U.S. District Court.

The testimony and evidence focused upon two broad issues:  exhaustion of administrative

remedies and the cause and effects of the July 12, 2008, incident.  The court recounts the relevant

evidence in the context of each issue:

**I.    The July 12, 2008, Incident**

    a)    <u>Plaintiff's Testimony</u>

Terry Lewis testified that on July 12, 2008, he was cleaning the shower area of the

dormitory bathrooms when someone came in and used the commode.  After this person finished

his business, plaintiff began to clean around the stalls.  A little while later, someone else entered

the bathroom, while Lewis was on his knees cleaning the stall area with a toothbrush.  At this

point, Sergeant Clacks entered the room and started screaming and hollering at plaintiff about

oral sex.  Plaintiff told Clacks that he did not know what he was talking about; he just was

---

any reopening of the evidentiary record at this point would not enure to plaintiff's benefit,
because it also would give defendants an opportunity to shore up their evidentiary omissions in
connection with their exhaustion defense.  *See* discussion, *infra*.

cleaning the bathroom.[4]  At that point, Clacks slapped Lewis on the face.  Plaintiff stated that after this provocation, he had no alternative but to defend himself.  Accordingly, plaintiff slapped Clacks in his face, with his open hand.  Plaintiff knew that it was wrong to strike an officer, and that he respected them.  However, they had to respect him too.

The officers then took plaintiff down to the ground.  Plaintiff did not resist.  However, the officers kicked and stomped on him while he was on the ground.  Sergeant Clacks told Lewis that if an inmate ever hit him, he would send him home in body bag.

The officers stood plaintiff next to the wall before taking him to lockdown.  They asked him if he wanted to see a nurse.  Lewis replied that he did.  He testified that during this period he felt something, possibly blood, dripping from his head along his arms.  He never saw the substance, however.  Lewis waited almost one week, until July 18, before he made an emergency sick call.  By that point, he was feeling real bad.  Plaintiff did not make an emergency sick call earlier, because his injuries were not that painful at that time.

Plaintiff stated that on July 18, 2008, the prison nurse diagnosed blood in his urine.  He conceded, however, that the nurse believed that the condition was caused by an infection.  Plaintiff explained that he never contracted infections.

Plaintiff testified that Warden Brown was at the facility on Saturday, July 12, 2008.  According to plaintiff, Warden Brown interrogated him about the incident.  The interrogation occurred in a clothing room next to the lockdown cells.  Plaintiff explained that when he told Warden Brown that he did not do anything, Brown threw his water bottle at him, hitting him in

---

[4]  Plaintiff explained that from Clacks' vantage point, he could not see the whole picture; rather, Clacks just jumped to an unfounded conclusion.

5

the eye.  The blow caused Lewis to experience blurry vision for the next few days.  Lewis

admitted, however, that his eyes already were blurry from the mace that the officers had sprayed

on him after they placed him in the lockdown cell.

Plaintiff acknowledged that he does not experience any permanent injuries from the

events of July 12, 2008.

b)      Sgt. Keith Clacks

During the relevant period, Clacks was employed by the Morehouse Parish Sheriff.  He

has been so employed since September 16, 2001.  In connection with his employment, Clacks

took a 90 hour corrections course at North Delta Regional Training Police Academy.

On October 12, 2008, Clacks and Corporal Black were walking down the hall by Charlie

Dormitory when they observed plaintiff, on his knees, performing oral sex on Alvora Lewis.

Sexual activities between inmates is not permitted at the prison.  It is the facility's policy to place

offenders in lockdown.  Accordingly, Clacks called Terry Lewis out into the hall and inquired

about what was going on.  Lewis became very angry and punched Clacks on the left side of his

face, with a closed fist.  Clacks and Black then took Lewis down to the floor so he would not

harm himself or anyone else.  Lewis continued to struggle while on the ground.  Clacks and

Black restrained Lewis until he calmed down.

Clacks did not kick or punch Lewis while he was on the ground.  He did not perform any

act of force other than taking Lewis to the floor.

Clacks did not observe any blood, cuts, or bruises on Lewis at any time during the

officers' attempts to restrain him.  After they subdued Lewis, Clacks escorted him to lockdown.

Clacks did not interrogate or question Lewis after he escorted him to lockdown.

6

Clacks generated a disciplinary report and an incident report following this event.  If Clacks had used mace, he would have so noted on the incident report.  The report does not indicate that mace was used.

Clacks contacted the warden after the incident.  The warden said that he would take care of it on Monday.

c)   <u>Cpl. Samuel Black</u>

Corporal Black has been employed at the Morehouse Parish Detention Center for the past seven years.  He received a 90 hour training course.  Black testified that he and Clacks observed plaintiff performing oral sex on another inmate.  Sergeant Clacks called Lewis out into the hall and questioned him about his actions.  Lewis became angry and hit Clacks.  Black and Clacks then took Lewis to the floor.  Plaintiff and Alvora Lewis were alone in the bathroom.  There was another officer who was possibly asleep in the dormitory, but he was not in the bathroom.

Black did not kick plaintiff.  However, he did strike plaintiff on his thigh to help take him to the floor.  Black added that he did not observe Clacks hit or strike Lewis — during that time. Black did not observe any blood, cuts, bruises, or scratches on Lewis.  Black accompanied Lewis to lock down.  He did not return to lockdown for further questioning.  Black and Clacks did not use excessive force at any time during the incident.

d)   <u>Warden Isaac Brown</u>

Isaac Brown has worked for the Morehouse Parish Sheriff for the past 14 years.  On July 12, 2008, Sergeant Clacks called Brown and told him that plaintiff had been performing oral sex on another inmate.  Clacks also told Brown that Lewis had hit him.  Brown told Clacks to complete the paperwork and that he would look at it on Monday.  Brown did not go to the facility

7

on July 12, 2008, because it was a Saturday.  He does not go out to the facility on Saturdays.  If he went to the facility every time there was an incident, he never would have a weekend off. Brown did not consider the event to be unusual.

Brown denied throwing a water bottle at Lewis.  He also denied interrogating Lewis.

Brown stated that officers are permitted to use force to protect themselves if they are being attacked.  In response to Lewis's behavior, Clacks and Black would have been authorized to use moderate force on Lewis to take him down and restrain him.  The officers are not authorized to kick or punch an inmate who is on the ground.

Lewis was subsequently transferred to Forcht-Wade Correctional Center.

e)    July 12, 2008, Disciplinary Form for Terry Lewis for Aggravated Sex Offense; Def. Exh. 1

Clacks observed Terry Lewis perform oral sex on inmate "Alvora Lewis."  Clacks told Terry Lewis to pack his property.  He then was placed in lockdown.  The form is signed by Clacks and dated July 12, 2008, at 10:05.

f)    July 12, 2008, Disciplinary Form for Alvora Lewis for Aggravated Sex Offense; Def. Exh. 1

Clacks completed the form substantially the same as the one he completed for Terry Lewis.

g)    July 12, 2008, Disciplinary Form for Terry Lewis for Defiance; Def. Exh. 1

Clacks called Terry Lewis on the hall to discuss his actions in the shower with inmate Alvora Lewis.  Terry Lewis became very angry and punched Clacks on the left side of his face. Clacks and Black took Lewis to the floor and tried to restrain him, but Lewis kept struggling. After Lewis calmed down, they took him to lockdown.  The form is signed by Clacks.

8

The court observes that on the bottom of the foregoing disciplinary forms there is a twenty-four hour notice provision whereby the inmate is "advised of right to make statement in defense or have assistance in preparing statement on his behalf, or call witnesses in his defense." There is a space for the inmate's signature, but the space is blank on all three disciplinary forms.

> h)   July 12, 2008, Accident/Incident Report; Def. Exh. 2

This report tracks the recollection of events set forth in the form discussed in item g).  It is signed by Clacks.

> I)   Lewis's Inmate File at Morehouse Parish; Def. Exh. 3

Plaintiff's inmate file contains forms and data that are mostly irrelevant to the instant proceeding.  The file does indicate, however, that plaintiff had accrued several minor disciplinary write-ups for disobedience.  In each case, the twenty-four hour notice provisions were signed by plaintiff.

> j)   July 18, 2008, Declaration of Emergency Treatment; Def. Exh. 5

On July 18, 2008, plaintiff submitted a form requesting emergency medical treatment because of blood in his urine.  According to his attached medication treatment record, the facility treated Lewis's condition with Bactrim and Pyridium from July 19 until his transfer on July 22, 2008.  Another form attached to plaintiff's emergency medical treatment request indicates that on December 10, 2004, Lewis acknowledged his awareness that homosexual activity was prohibited at the facility.

> k)   August 8, 2004, Disciplinary Report; Def. Exh. 6

On August 8, 2004, an officer at another correctional facility observed Lewis on the ground, being kicked and punched by another inmate.  Lewis was found guilty of fighting.

9

L)    Requests for Medical Treatment at David Wade Correctional Center; Def. Exh. 7

On November 24, 2008, December 17, 2008, and January 15, 2009, plaintiff submitted requests for medical treatment because of right side or lower back pain.  The November 24, 2008, request for treatment attributes the pain to having been kicked in the back by an officer.

## II.    Exhaustion of Administrative Remedies

a)    Warden Brown

Warden Brown testified that he was the person who would receive any grievances that were filed at the prison.  However, he never received a grievance from Lewis regarding this incident.  Lewis was notified of the grievance process at the time that he was booked into the prison.  While in lockdown, Lewis still had access to forms to generate a grievance and/or an emergency sick call.

b)    Terry Lewis

Lewis admitted that he was advised of the administrative remedy procedure when he arrived at the prison.

Lewis remained in lockdown from July 12, 2008, until he was transferred out of MPDC on July 22, 2008.  Lewis did not file a grievance while in lockdown because he did not have access to a grievance form.  He asked someone on the night shift for a form, but never received one.  He eventually filed a grievance on November 21, 2008, at David Wade Correctional Center.[5]

Lewis waited until November 21 to file his grievance because he had to use available

---

[5]  Between July 22, 2008, and October 6, 2008, Lewis was housed at the Forcht Wade Correctional Center.

grievance procedures.  On November 25, 2008, David Wade Correctional Center rejected his grievance because it challenged an incident that occurred at the MPDC.  The response advised Lewis to file his grievance with the MPDC.

Plaintiff testified that he then wrote a grievance to the MPDC, but never received a response.  He sent the grievance to Warden Tappin, but did not retain a copy.

c)      MPSO/Morehouse Parish Jail ARP Booking Sheet; Def. Exh. 3

Plaintiff signed a form acknowledging that he had

a copy of the Administrative Remedy Procedure (ARP) provided by the staff of the Morehouse Parish Jail.  This procedure lets me ask for a review of my complaint in this facility.  I understand that I only use this procedure when all other ways of solving my problem have tried and failed.  This applies to both pre-trial and convicted inmates in the Sheriff's custody.

The form is dated November 24, 2004.

d)      Administrative Remedy Procedure Grievance, Dated Nov. 21, 2008; Def. Exh. 4

Plaintiff completed the foregoing form recounting the incident on July 12, 2008.  He stated that Sergeant Clacks knocked him to the ground with his open hand.  As Lewis regained his feet, Sergeant Clacks and Corporal Black punched him in the back of the head, again knocking him to the ground.  Corporal Black then repeatedly kicked Lewis until he lost his wind.

Clacks and Black then escorted Lewis to the booking area and checked him for bruises. Warden Brown showed up, and Lewis explained what happened.  Brown told Lewis that he was lying.[6]  On July 18, 2008, Lewis made an emergency medical request and was seen by the nurse.

Lewis believed that the officers handled the matter unprofessionally, and felt that they should be investigated.

_____

[6] The grievance does not mention that Brown threw the water bottle at Lewis.

The grievance was rejected on November 25, 2008, because the incident occurred at another facility.

## <u>Analysis and Resolution of Disputed Facts</u>

"An evidentiary hearing consistent with *Flowers v. Phelps* amounts to a bench trial replete with credibility determinations and findings of fact." *Adkins v. Kaspar*, 393 F.3d 559, 563 (5th Cir. 2004) (citations and internal quotation marks omitted).  Further, "[a] civil plaintiff seeking to recover damages for use of excessive force must prove his claim by a preponderance of the evidence." *Yarrito v. Cook*, 1995 WL 17788756 (5th Cir. June 22, 1995) (unpubl.) (citation omitted).  "Preponderance" means that it is more likely so, than not so.  *Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1164 (5th Cir. 1993) (citation omitted).  It remains within the province of the finder of fact to weigh conflicting evidence and inferences and to determine the credibility of witnesses.  *See Yarrito, supra.*

At the close of the presentation of plaintiff's evidence herein, defendants moved for a judgment as a matter of law on the grounds that 1) plaintiff failed to exhaust available administrative remedies; and 2) any injuries he suffered were de minimis.

In a bench trial, "the appropriate vehicle for dismissing a case as a matter of law at the close of plaintiff's evidence is a Rule 52(c) judgment on partial findings."  *Weber v. Gainey's Concrete Products, Inc.*, 1998 WL 699047, *1 n1 (5th Cir. Sept. 21, 1998) (unpubl.) (citation omitted).  Rule 52 provides, in pertinent part,

> **Judgment on Partial Findings**.  If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the

> evidence. A judgment on partial findings must be supported by findings of fact
> and conclusions of law as required by Rule 52(a).

Fed.R.Civ.P. 52(c).

When deciding a case pursuant to Rule 52(c), the court is not required to make any special

inferences or construe the facts in the light most favorable to the plaintiff. *Weber, supra*.

Here, defendants did not submit any additional evidence after the close of plaintiff's case.

Thus, the motion for judgment as a matter of law essentially is subsumed within the court's

consideration and resolution of the case, as a whole. Moreover, the undersigned does not resolve

the matter on either of the two grounds urged by defendants. Accordingly, the motion is not

well-taken. Nonetheless, the court will use the two grounds urged by defendants as a framework

for decision.

## I.    Exhaustion of Administrative Remedies

a)      Law

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act

("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of

this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the

administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006)

(citations omitted). All "available" remedies must be exhausted, whether speedy and effective,

or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion

requires that the prisoner not only pursue all available avenues of relief but also comply with all

administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5[th]

Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford v. Ngo*, 548 U.S. at 89-93, 126 S.Ct. 2378)).  An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement.  *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege **excessive force** or some other wrong."  *Porter, supra* (citation omitted) (emphasis added).  An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary."  *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted).  Exhaustion also applies to claims brought against defendants in their official and/or individual capacities.  *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance.  *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. May 24, 2007) (unpubl.) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954, (5th Cir. Oct. 28, 2009) (unpubl.) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561, ( April 15, 2010) (unpubl.) (citation omitted).  Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances."  *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010) (citations omitted).  When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable.  *Id*.

As the Fifth Circuit recently emphasized, "[i]f impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has

been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).  Stated another way, the grievance filing period is tolled only so long as the inmate is actually impeded from invoking and exhausting the process.

When the court holds an evidentiary hearing on the affirmative defense of exhaustion, defendant must establish failure to exhaust by a preponderance of the evidence.  *See Felch v. Transportes Lar-Mex SA*, 92 F.3d 320, 326 (5th Cir. 1996) (citations omitted) (discussing burden of proof in the context of personal jurisdiction).

  b)  <u>Defendants Did Not Establish That Plaintiff Failed to Exhaust Available Administrative Remedies</u>

The evidence adduced at the hearing establishes that the MPDC had an administrative remedy procedure ("ARP") in effect during the relevant period.  In fact, plaintiff acknowledged that he received a copy of the ARP when he arrived at the MPDC.  Nevertheless, defendants did not adduce a copy of the ARP or otherwise establish the terms of the ARP.  Accordingly, the court remains unaware of the ARP's filing requirements and the associated deadline(s) for filing a grievance.

It is not contested that plaintiff submitted a grievance regarding the July 12, 2008, incident to officials at the David Wade Correctional Center on November 21, 2008.  Furthermore, there is no evidence that this submission did not comply with the undisclosed terms of the ARP.

Plaintiff also testified that he submitted another grievance to then-Warden Tappin at the MPSO.  Although Warden Brown testified that he was the person to receive grievances at the

facility, and that he never received a grievance regarding the subject incident, his testimony does not preclude the reasonable possibility that the grievance was received by Warden Tappin, and, for whatever reason, was not forwarded to Brown.

In sum, the evidence establishes that more than four months after the incident, plaintiff submitted one or more grievances regarding the subject incident.  There is no indication that this submission(s) was untimely or that it failed to exhaust all available steps of the ARP.[7] Accordingly, defendants have not established that plaintiff failed to exhaust available administrative remedies before filing suit.

## II.   Excessive Force, Cognizable Physical Injury, and Requested Relief

a)   <u>Law</u>

When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishments Clause, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*,  503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986)).; *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997).  However, not every malevolent touch by a prison guard gives rise to a federal cause of action.  *Id.* (citation omitted).  The Eighth Amendment also does not protect against "de minimis" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind."  *Id.*  (citation and internal quotation marks omitted).[8]  Thus, in

_____

[7]  No evidence was adduced to establish that the ARP comprised more than one step.

[8]  The PLRA further provides that "[n]o [f]ederal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C.A. § 1997e(e).

considering an excessive force claim, the court should consider the following factors, (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir.1999).

b) <u>Plaintiff Failed to Establish that Defendants' Use of Force Was Constitutionally Excessive</u>

This case hinges upon credibility.  If the court were to credit, fully, plaintiff's version of events, it necessarily follows that he suffered more than a de minimis injury.  Indeed, plaintiff testified that Clacks and/or Black kicked and stomped on him while he was on the ground.[9] Moreover, according to plaintiff, the incident caused him to experience back and side pain that worsened over time, culminating with blood in his urine.  Plaintiff also complained of back pain for several months after the incident.  *See Flowers, supra* (moderate swelling and probable sprain of ankle, small abrasion, and a limited range of motion due to pain was more than de minimis injury).

On the other hand, if the court credits defendants' version of events, they responded with the minimal level of force necessary to subdue a combative inmate.  According to defendants, plaintiff became angry and slapped Clacks in the face.  This physical attack on a guard prompted Clacks and Black to wrestle plaintiff to the ground and restrain him until he ceased struggling.

---

The Fifth Circuit has equated § 1997e(e)'s "physical injury" requirement with the standard used under the Eighth Amendment; that is, an injury that is more than de minimis, but not necessarily significant.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

[9] Warden Brown explained that officers are not authorized to strike an inmate while he is on the ground.

The officers then escorted Lewis to lockdown, where he remained until his transfer a few days later.

Both versions of events are plausible.  At the hearing, plaintiff appeared emotional at times, and susceptible to anger.  When accused by Clacks of engaging in a sexual act (whether he actually did so or not), it is not unlikely that Lewis became upset and angry.  If the disagreement became heated, as the evidence indicates that it did, then either Lewis or Clacks could have lost their composure and slapped the other in the face.  Clacks and Black testified, under oath, that Lewis struck first.  Lewis testified, under oath, that Clacks struck him first, causing Lewis to retaliate.  Under either version of events, Clacks and Black took Lewis to the ground after Lewis struck Clacks.  Black admitted striking Lewis on his leg to take him to the ground.  Moreover, the officers undoubtedly used some measure of force to subdue Lewis on the ground.

To be sure, there are some potential holes in defendants' stories.  For instance, although defendants adduced plaintiff's medication sheet, the record does not contain any associated nurse's notes that typically accompany a sick call.  Although under certain circumstances, this omission could give rise to a negative inference, it is equally probable, at least in this case, that there was no such note, or that it was omitted from the record because of inadvertence, rather than an intentional effort to hide unfavorable evidence.  *See e.g.*, Defs. failure to adduce ARP, *supra*.

Also, the portions of the disciplinary reports that advise inmates of their 24 hour right to make a statement on their behalf remained unsigned by plaintiff.  Again, while potentially suspicious, there could be a benign explanation for the omission, especially since the omission was neither mentioned, nor explored at the hearing.

18

Conversely, plaintiff's version of events has not always remained consistent.  In his grievance that he filed at David Wade Correctional Center, he did not mention that he slapped Officer Clacks.  His grievance and original federal court complaint also omit a reference to the macing incident.  The macing allegation does not materialize until several months later in plaintiff's amended complaint, wherein he stated that defendants maced him *before* throwing him in a holding cell.  [doc. # 7].  At the hearing, however, plaintiff testified that defendants maced him *after* they placed him in the cell.

Throughout the hearing, defendants maintained that Warden Brown was not at the facility on Saturday, July 12, 2008.  Brown explained that he does not go the facility on his days off.  He added that he never interrogated plaintiff regarding the incident.  Brown denied throwing a water bottle at Lewis.

In the final analysis, the undersigned credits defendants' version of events, finding as follows,

1)      Plaintiff struck the first blow;

2)      Officers, Clacks and Black, then took plaintiff to the ground and subdued him, without infliction of any unnecessary, wanton, or malicious blows;

3)      The officers escorted plaintiff to lockdown;

4)      The officers did not mace plaintiff;

5)      Warden Brown did not throw a water bottle at plaintiff;

6)      Plaintiff did not establish that the blood in his urine was caused by blows or kicks administered by defendants;

7)      Plaintiff's back and side pain was caused by defendants' legitimate and proportionate response to plaintiff's battery of a corrections officer.

19

In reaching this decision, the court emphasizes that plaintiff enjoys the burden of proving his case by a preponderance of the evidence, i.e., that his allegations are more likely so, than not so.  When, as here, plaintiff is involved in a swearing match against defendants, it is vital that he support his version of events with corroborative evidence or witnesses, or failing that, to present his allegations, over time, in a uniform and consistent manner, and to uncover inconsistencies in defendants' version of events.  Plaintiff has not done so here; he has not persuaded the court that his version of events is more likely so, than not so.  *See e.g., Terry v. Bossier Medium Sec. Facility*, 2010 WL 4875679 (W.D. La. Oct. 21, 2010) (evidence was close, but plaintiff did not meet his burden of proof); *Bretado v. Kennedy*, 2007 WL 1989837 (E.D. Tex. July 2, 2007) (plaintiff did not prove his case by preponderance of the evidence where defendant's version of events was just as likely, if not more so, than plaintiff's version).

Accordingly, the undersigned concludes that plaintiff has not established that defendants violated his Eighth Amendment protections against excessive force.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the motion for judgment as a matter of law on partial findings filed by defendants Keith Clacks, Samuel Black, and Isaac Brown, be **DENIED**;

**IT FURTHER RECOMMENDED** that judgment be entered in favor of defendants, Keith Clacks (identified as "Sgt. Clacks"), Samuel Black (identified as "Cpl. Black"), and Isaac Brown (identified as "Assistant Warden Brown"), and against plaintiff, Terry A. Lewis, dismissing, with prejudice, plaintiff's complaint, in its entirety.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and FRCP Rule 72(b), the parties have

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 3rd day of March 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE